

## OFFICE OF THE ATTORNEY GENERAL OF TEXAS

### AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable Traylor Russell
District Attorney
Mt. Pleasant, Texas

Dear Sir:

Opinion No. O-5276
Re: Are the members of the
Auxiliary Military Police
authorized to carry con-
cealed weapons at any and
all times, regardless of
whether they be traveling
to and from their place of
residence to their place
of work?

This will acknowledge receipt of your letter of re-
cent date, which reads as follows:

"I request of your department an opinion in
regard to the following:

"By virtue of Art. 606 B of Title 15 of the
Federal Code, the Reconstruction Finance Corpora-
tion is authorized to organize or create corpora-
tion or corporations with power

"(b) 'To purchase and lease lands, purchase,
lease, build, and expend plants, and purchase
and produce equipment facilities, machinery, mater-
ials and supplies for the manufacture of strategic
and critical materials, etc.'

"The corporations so organized are known as
defense plant corporations. Such a corporation
was organized for the purpose of constructing on
lands acquired located in the South part of Morris
County, a plant for the purpose of smeltering iron.
The corporation is now, and has been for some time,
engaged in the construction of this plant.

"By virtue of executive order No. 8972 under
date of December 12, 1942, the Secretary of War

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable Traylor Russell, page 2

and the Secretary of Navy were authorized 'to establish and maintain military guards and patrols and to take other appropriate measures to protect from injury and destruction certain strategic premises materials and utilities, all of which are set out in Cir. 15 issued by the War Department under date of March 17, 1943. This circular further states,

"'Accordingly, the Secretary of War directed the military organization of plant guard forces as Auxiliary Military Police.'

"It is further provided in the circular mentioned above that these members of the Auxiliary Police shall take an oath of office, a copy of which is enclosed herewith and the circular further provides that these Auxiliary Military Police shall be subject to call at all times for military use in any emergency.

"The Defense Plant Corporation in Morris County has employed a number of these Auxiliary Police to guard its premises and materials. The majority of these men are local men, living in the vicinity of 25 miles of the place of their work, Each is armed with a pistol which must be provided by each individual. Under instructions of the corporation officers of this unit, these men have been carrying these pistols with them from their place of residence to their work. They do not carry these pistols on their person while going to and from their work but are required to carry them not loaded in their vehicle in which they may be traveling and in the event they leave this vehicle for any purpose, they are instructed to leave the gun in the automobile. They are further instructed that in traveling to and from their work to their place of residence that they must travel the most usual directly traveled road. Recently, the Sheriff of Morris County arrested one of these Auxiliary Military Police and filed charges against him under Art. 483, Chapter 4, Title 9, P.C. of Texas. This man so arrested and charged was at the time of his arrest traveling from his place of residence to his place of work.

Honorable Traylor Russell, page 3

"Based upon the foregoing facts, I ask of
your department an opinion in regard to the fol-
lowing:

"1.   Are the members of the Auxiliary Mili-
tary Police authorized to carry concealed weapons
at any and all times, regardless of whether they
be traveling to and from their place of residence
to their place of work?

"2.   If the above question is answered in the
negative; then are the members of the Auxiliary
Military Police permitted to carry at all times
concealed weapons with them from their place of
residence to their work?

"I enclose herewith a copy of circular 15
which has been delivered to me and kindly ask that
you return this circular along with the oath of
office with your opinion.

"   .   .   .   ."

We have carefully read Circular No. 15, issued by
the War Department, Headquarters, Army Service Force, Washing-
ton, D. C., dated as of March 17, 1943, pertaining to Auxili-
ary Military Police, together with the Agreement between the
United States of America and the plant guard.

We are setting forth certain portions of said Cir-
cular No. 15, which we feel are pertinent and have an important
bearing on the issues involved.

On page 1, the purpose of the Auxiliary Military
Police is stated as follows:

"1.   .   .   .   The purpose is to increase the
authority, efficiency, and responsibility of guard
forces at plants important to the prosecution of
the war, and though military training to provide
auxiliary forces throughout the United States to
supplement the Army in wartime emergency situations."

The mission of the Auxiliary Military Police is pro-
vided on page 2 and from which the following is taken:

Honorable Traylor Russell, page 4

"2. **Mission of the Auxiliary Military Police.**
-- a. The mission of a guard force of Auxiliary
Military Police is ---

"(1) To provide internal and external pro-
tection of the plant against sabotage,
espionage, and natural hazards.

"(2) To serve with the Army in providing pro-
tection to the plant and its environs in
emergency situations.

"b. An emergency situation in which the Auxil-
iary Military Police may be called upon for military
service may arise from flood, conflagration, or
other disaster; internal disorders hazardous to
property or production important to the prosecu-
tion of the war; enemy action by air raid; fifth
column activities; paratroop attack or invasion;
or it may arise from any other condition or cir-
cumstance involving the plant or its community mak-
ing it necessary to place in operation one or more
of the emergency plans of the War Department or of
the Service Command.

"c. A guard force or any member thereof,
whether on or off duty, may be assigned to duty
in an emergency at places other than the premises
of the plant normally served, provided only that
in the opinion of the plant guard officer or other
representative of the Army in command such assign-
ment will contribute to the protection of the guard
force's own plant and its environs or to the pro-
tection of its production."

On page 4, we find the following language:

"5. . . . Guard forces which have not been
organized as required (see par. 1, attached let-
ter) will be assembled at the earliest practicable
date by the plant management at the request of the
plant guard officer. At this assembly the Arti-
cles of War as prescribed by Article of War 110
will be read and explained to each member of the
guard force. . . ."

Honorable Traylor Russell, page 5

The circular reads in part as follows on page 5:

"The Auxiliary Military Police, immediately after the Articles of War have been read and explained, will be impressed with the fact that the Government of the United States is directly interested in the security and protection of the plant and its production as essential to the successful prosecution of the war. . . .

"5. The Government of the United States regards the protection of this plant and its production as essential in the successful prosecution of the war. The Auxiliary Military Police are ordered to provide this necessary protection and to ward off danger or threat of danger of any kind and from any source. If force must be used to accomplish this result it will be used only to extent reasonably necessary."

The following appears on page 7:

"The Auxiliary Military Police are supplementing the Army of the United States in a vital task of protecting war materials and war production facilities. Attempts to intimidate them or to reduce or nullify their efficiency, or interfere with the performance of their mission, may constitute a violation of Federal as well as state criminal laws. When such incidents are suspected, an inquiry will be made and a detailed report will be sent immediately through channels to the office of the Provost Marshal General as a basis for requesting an investigation or prosecution."

On page 9, we find as follows:

"Because the mission of the Auxiliary Military Police includes service with the Army (see par. 2b), the laws of war require that members wear distinctive insignia or marks capable of recognition at a distance. By wearing such insignia or marks members serving with the Army will be recognized as legitimate troops and not deemed irregulars or guerillas. . . ."

Honorable Traylor Russell, page 6

Then, on pages 10 and 11 we quote in part:

"The Auxiliary Military Police must be armed with appropriate weapons furnished by the plant management if such arming is recommended by the plant guard officer. Any sidearm, rifle, or shotgun may be an appropriate weapon depending on the circumstances. . . .

"The Auxiliary Military Police, as agents of the Federal Government will not be subject to any state or municipal requirement which conflicts with their wartime duties. A member of the Auxiliary Military Police required to be armed in performance of his duties will not be compelled to obtain a license, permit, or bond to possess small firearms in order to comply with local statutes or ordinances. State authorities have concurred when this question has been presented. The full cooperation of state and local authorities will be obtained and local requirements met unless a satisfactory understanding is reached."

Certain portions of the Agreement between the United States of America and plant guards are as follows:

". . . the United States is approving the employment of certain guards as a civilian auxiliary to the military police for the purpose of guarding and protecting war material, war premises and war utilities from injury or destruction by the enemy or otherwise, including the making of arrest, as peace officers for violations of Federal laws, as well as for violations of orders and regulations issued by military authority. . . .

"(3) . . . and will obey any orders issued in connection therewith by the President, as Commander in Chief of the Army and Navy of the United States, and by his duly authorized officers.

". . . .

"(4) . . . I am subject to military law during the period of my employment."

As you stated in your letter, the members of the Auxiliary Military Police in Morris County are, under instructions of the corporation officers of this unit, carrying pistols on their persons while going to and from their work; that they are further instructed to carry the pistols unloaded in their vehicles in which they may be traveling and in the event they leave their vehicles for any purpose, they are instructed to leave their guns in the automobiles. In traveling to and from work, they must travel the most usual directly traveled road.

It is the opinion of this department that the members of the Auxiliary Military Police, acting in accordance with instructions above set out, are not violating any penal law of the State of Texas with reference to carrying a pistol. Furthermore, since the instructions of the corporation officers of this particular unit do not permit its guards to carry pistols at any and all times, we do not feel it necessary to answer your query as to whether or not members of the Auxiliary Military Police are allowed to carry concealed weapons at any and all times, regardless of whether they be traveling to and from work.

As per your request, we are returning with this opinion Circular No. 15 and the Oath of Office which accompanied your letter.

Yours very truly

ATTORNEY GENERAL OF TEXAS

APPROVED JUN 1, 1943

FIRST ASSISTANT
ATTORNEY GENERAL

By _Fred C. Chandler_
Fred C. Chandler
Assistant

By _Robert O. Koch_
Robert O. Koch

ROK:db



APPROVED
OPINION
COMMITTEE
BY